Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| ASOCIACIÓN PUERTORRIQUEÑA DE LA JUDICATURA, INC.; HON. FELIPE RIVERA COLÓN y HON. ERIC R. RONDA DEL TORO, JUECES DE APELACIONES<br><br>Parte Apelante<br><br>v.<br><br>GOBIERNO DE PUERTO RICO (ESTADO LIBRE ASOCIADO DE PUERTO RICO) REPRESENTADO POR SU SECRETARIA DE JUSTICIA Y LA OFICINA DE ADMINISRACIÓN DE TRIBUNALES (OAT) REPRESENTADO POR EL DIRECTOR ADMINISTRATIVO DE TRIBUNALES<br><br>Parte Apelada | TA2026AP00036 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan, Sala (904)<br><br>Caso Núm.: SJ2025CV03565<br><br>Sobre: Injunction Preliminar y Permanente y Sentencia Declaratoria |

Panel integrado por su presidenta la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

*Per Curiam*

### SENTENCIA

En San Juan, Puerto Rico, a 25 de marzo de 2026.

El caso de autos nos da la oportunidad de justipreciar si retar la constitucionalidad del retiro obligatorio de los jueces y juezas al cumplir los 70 años es un asunto justiciable que debe ser atendido por los tribunales. Contestamos en la negativa.

-I-

El 25 de abril de 2025, la Asociación Puertorriqueña de La Judicatura, Inc., el Hon. Felipe Rivera Colón y Hon. Eric R. Ronda del Toro, Jueces de Apelaciones (los apelantes), presentaron ante el

Tribunal Superior de Puerto Rico, Sala Superior de San Juan, (TPI o foro primario) una solicitud de sentencia declaratoria, *injunction* preliminar y permanente.[1] En su *Demanda,* impugnaron la validez constitucional de la Sección 10, del Art. V de la Constitución del Estado Libre Asociado de Puerto Rico, *infra,* que establece que el retiro de los jueces será obligatorio al cumplir setenta (70) años.[2] Ante tal reclamo, y como remedio, peticionaron al foro primario:

1. que dictara un *injunction* preliminar y permanente contra el Gobierno de Puerto Rico (ELA) y la Administración de Tribunales (OAT) prohibiéndoles obligar a aquellos jueces y juezas que cumplen 70 años y aun les resta tiempo para desempeñar el cargo para el que fueron nombrados y nombradas a retirarse; y

2. que mediante sentencia declaratoria resolviera que el retiro obligatorio incluido en el Art. V, Sección 10 de nuestra Constitución es inconstitucional al amparo de la Constitución de los Estados Unidos de América por ser ilegal y discriminatorio.

Con tales fines, los apelantes arguyeron que el Plan Fiscal publicado por la Junta de Supervisión Fiscal (JSF) del 28 de febrero de 2017,[3] impactó al Sistema de Retiro de la Judicatura y, por consiguiente, a las pensiones de los jueces en funciones y la de varios magistrados que debían acogerse al retiro por edad antes de que el plazo de su nombramiento venciera. Según los apelantes, como consecuencia de lo anterior, las aludidas pensiones fueron reducidas significativamente en comparación con aquellas vigentes cuando entraron a ejercer la posición de Juez.

Habida cuenta de ello, alegaron que, mediante el Plan Fiscal del 28 de febrero de 2017, la sección constitucional impugnada fue parcialmente dejada sin efecto, toda vez que la misma requiere que exista un sistema de retiro para los jueces, más a partir del 15 de

---

[1] Entrada Núm. 1 del Sistema Unificado para el Manejo y Administración de Casos del Tribunal de Primera Instancia, (SUMAC-TPI).

[2] La disposición impugnada lee de la siguiente manera: "La Asamblea Legislativa establecerá un sistema de retiro para los jueces, retiro que será obligatorio cuando hubieren cumplido setenta años de edad." Sec. 10 del Art. V de la Constitución del Estado Libre Asociado, LPRA, Tomo 1.

[3] Hecho en cumplimiento con la Ley de Supervisión, Administración y Estabilidad Económica de Puerto Rico (Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA).

marzo de 2022, tal pensión fue eliminada, según estos. Así pues, señalaron que el retiro compulsorio de los jueces y las juezas tras cumplir 70 años viola las disposiciones de igual protección de las leyes establecida en la Constitución de los Estados Unidos de América, además de constituir una violación al *Age Discrimination in Employment Act* (ADEA).

Por último, en su *Demanda,* los apelantes negaron que la jurisprudencia interpretativa federal sobre el retiro obligatorio de los jueces y juezas aplicara a la controversia planteada. Particularmente, rechazaron que procediera implementar lo resuelto en *Gregory v. Ashcroft, infra,* pues este y demás casos tratan de impugnaciones a la constitución de diferentes Estados que gozan de la soberanía propia que Puerto Rico carece.[4]

El mismo día en que fue radicada la *Demanda,* el TPI dictó *Orden* para que los apelantes sometieran los correspondientes emplazamientos.[5] Al mismo tiempo, y habiéndose expedido éstos en esa fecha, emitió *Orden de Mostrar Causa* concediéndole a las partes demandadas cinco (5) días para exponer por qué no debía conceder los remedios peticionados.[6]

El 5 de mayo de 2025, la Oficina de Administración de Tribunales (OAT) solicitó una prórroga de diez (10) días para responder las alegaciones levantadas en su contra. A la par, el Gobierno de Puerto Rico (Estado) presentó una *Moción de Desestimación* en la que reclamó que el pleito no era justiciable.[7] Así pues, señaló que los apelantes no esbozaron un daño

---

[4] Cabe destacar que su argumento descansó en ciertas expresiones emitidas por el Tribunal Supremo Federal en el caso de *Commonwealth of Puerto Rico v. Sánchez Valle*, 136 S. Ct. 1863, 579 US 59 (2016). En particular, en que la citada decisión enunció lo siguiente: "... the oldest roots of Puerto Rico´s power to prosecute lie in federal soil."; "Commenting on a Puerto Rico statute that overlapped with a federal law, we explained that this "legislative duplication (gave) rise to no danger of a second prosecution" because "the territoril and federal laws (were) creations emanating from the same sovereignty."

[5] SUMAC-TPI, Entrada Núm. 2.

[6] Allí, advirtió a los apelantes que debían diligenciar el emplazamiento y notificar dicha orden con copia de la *Demanda* en cinco (5) días. *Id.,* Entrada Núm. 5.

[7] *Id.,* Entrada Núm. 12.

particularizado, sino uno general que comparten todos los jueces que se encuentran en la Judicatura, por lo que carecían de legitimación activa para instar la acción de epígrafe. También, afirmó que la controversia no estaba madura, pues a ninguno de los jueces demandantes le era aplicable el retiro compulsorio por no haber cumplido todavía 70 años. Además, reclamó que el asunto planteado ante el tribunal trataba sobre una cuestión política que no era susceptible de determinación judicial, correspondiéndole su solución a otras ramas del gobierno y al Pueblo de Puerto Rico.

En la alternativa, de entenderse justiciable la controversia, el Estado alegó que la causa de acción de los apelantes no satisfacía los requisitos necesarios para la expedición de los remedios invocados de interdicto y sentencia declaratoria. Con respecto al interdicto solicitado, arguyó que el mecanismo de enmienda contemplado en nuestra Constitución constituía un remedio adecuado en ley, por lo que tal remedio era improcedente en Derecho. Mientras, y en cuanto al remedio de sentencia declaratoria, expuso que no existía una controversia sustancial o incertidumbre jurídica para dilucidar. También apuntó que el remedio de la sentencia declaratoria no puede utilizarse con el propósito de derogar o modificar la Constitución de Puerto Rico como pretendían los apelantes.

Al mismo tiempo, el Estado argumentó que, contrario a lo que los apelantes plantearon en su *Demanda*, a la controversia de autos sí le era aplicable lo resuelto por el Tribunal Federal en *Gregory v. Ashcroft*. A tales efectos, indicó que la controversia atendida en el caso de *Pueblo v. Sánchez Valle*, *supra*- jurisprudencia en la que descansaron los apelantes para efectuar dicho planteamiento- se resolvió dentro del contexto de la garantía de la doble exposición y no acerca de la Enmienda Decimocuarta, ni de ADEA. Asimismo, añadió que nuestro Tribunal Supremo al atender y resolver el caso

de *Pueblo v. Casellas Toro*, 197 DPR 1003, 1013 (2017) se expresó sobre el particular y estableció que "mediante la Ley Pública 600 el Congreso delegó al Pueblo de Puerto Rico la autoridad de diseñar un gobierno propio, con un sistema de tribunales separado de los tribunales federales.

Por su parte, el 15 de mayo de 2025, la OAT presentó una *Moción en Cumplimiento de Orden de Mostrar Causa y en Solicitud de Desestimación* en la que, en síntesis, reprodujo los argumentos levantados por el Estado. Habiéndosele ordenado a los apelantes a expresarse en cuanto a ambas mociones, el 28 de mayo de 2025 presentaron su *Oposición a Desestimación*.

El 29 de mayo de 2025 el TPI señalo vista argumentativa para el 11 de junio de 2025. Sin embargo, por conflicto en calendario, esta fue finalmente celebrada el 15 de julio de 2025. Una vez ya sometido el caso para determinación, el 12 de diciembre del mismo año, el TPI dictó la *Sentencia* objeto del presente recurso. En esta, en virtud del derecho aplicable allí consignado, concedió las mociones dispositivas sometidas por el Estado y la OAT en el caso desestimándolo.

El análisis efectuado por el foro primario nos parece importante. Por eso, a continuación, procedemos a transcribirlo:

> Para encuadrar apropiadamente esta discusión, es necesario examinar lo que dispone nuestro ordenamiento jurídico acerca de la justiciabilidad. Solo así es posible atender los reparos planteados por los codemandados y determinar si, en efecto, existe algún impedimento que restrinja a este foro de considerar los méritos de la controversia. Dicho esto, como se expone en el acápite IV de este escrito, el referido principio constituye un mecanismo orientado a salvaguardar los límites constitucionales que dieron forma a la teoría de separación de poderes. En ese espectro, la justiciabilidad "responde [. . .] al papel asignado a la [j]udicatura en una distribución tripartita de poderes, diseñada para asegurar que no [se] intervendrá en áreas sometidas al criterio de otras ramas de gobierno". *Fund. Surfrider y otros v. A.R.Pe.*, *supra*, pág. 571. De ahí que la intervención judicial se encuentre vedada en aquellos supuestos que la jurisprudencia ha catalogado como no justiciables, entre los que figuran las cuestiones políticas, la falta de legitimación activa, la academicidad, las opiniones consultivas y la ausencia de madurez.

Con ese trasfondo, este Tribunal procede a evaluar, de manera ordenada, los tres aspectos de justiciabilidad planteados por los codemandados: legitimación activa, madurez y cuestión política. En lo que compete al primero, de los hechos que se han tomado como ciertos a los fines de resolver las mociones de desestimación, el simple hecho de que los demandantes ocupen un cargo en la judicatura facilita la constatación de su legitimación activa, ya que, como es obvio, están sujetos al Art. V, Sec. 10 de la Constitución de Puerto Rico, supra. Sin embargo, es el Hon. Felipe Rivera Colón quien, por cumplir setenta años en mayo de 2026, se ubica de forma más precisa dentro de los linderos de un daño claro y palpable, así como de la conexión necesaria entre ese daño alegado y la causa de acción ejercitada. Precisamente por el aspecto temporal que lo anterior entraña, el compañero Rivera Colón también satisface la doctrina de madurez, pues la presentación de la *Demanda* y la inminencia del perjuicio que advendría una vez alcance dicha edad justifican la intervención judicial en estos momentos.

Ahora bien, distinto es el escenario cuando se examina la doctrina de cuestión política. En este punto, la controversia debe analizarse desde los tres flancos que componen nuestro sistema de gobierno, así como del rol de la Constitución de Puerto Rico como instrumento de organización política. A esos efectos, este Tribunal coincide con el Estado y la OAT en que el Art. V, Sec. 10 de la Constitución de Puerto Rico, *supra*, plantea una cuestión política que no es susceptible de adjudicación judicial. En cambio, lo que aquí se solicita, que no es otra cosa que alterar el texto constitucional al eliminar uno de sus articulados, es un asunto que corresponde a la esfera encargada de formular la política pública, entiéndase, la Asamblea Legislativa. Correspondería a dicho cuerpo, de estimarlo procedente, ejercer la facultad que le confiere la Constitución de Puerto Rico para proponer enmiendas o llevar a cabo su revisión.

Así las cosas, resulta innecesario que este foro profundice en los argumentos formulados de manera alternativa para el eventual escenario de que el caso se estimara justiciable.

Descontentos con el dictamen, el 27 de diciembre de 2025, los apelantes solicitaron oportunamente su reconsideración. El día 29 del mismo mes y año, el TPI dictó *Resolución Interlocutoria* en la que declaró No Ha Lugar dicha solicitud. Inconformes aun, estos instaron el recurso de epígrafe y como único señalamiento de error, reclaman que el foro primario se equivocó al desestimar su *Demanda* por falta de legitimación activa, y por considerar que el asunto traído ante el tribunal se trata de una cuestión política.[8]

---

[8] Textualmente, el señalamiento de error levantado lee: Cometió error de Derecho el TPI al Desestimar la Demanda por falta de legitimación activa, y por considerar que se trajo ante el Tribunal una controversia que plantea una cuestión política.

Examinada la *Apelación,* el 20 de enero del año en curso, emitimos *Resolución* en la que le ordenamos al Estado y a la Oficina de Administración de Tribunales, presentar su posición no más tarde del 17 de febrero de 2026. En cumplimiento con lo ordenado, en el plazo establecido, así comparecieron.[9]

Con la comparecencia de las partes, procedemos a resolver, no sin antes consignar la normativa jurídica aplicable.

-II-

*A.*

Nuestro ordenamiento jurídico permite que un demandado solicite la desestimación de la reclamación judicial instada en su contra cuando de las alegaciones de la demanda surja que alguna defensa afirmativa derrotará la pretensión del demandante. *Rodríguez Vázquez v. Hospital Español Auxilio Mutuo,* 2025 TSPR 55, 215 DPR ___. Es por esta razón que puede solicitarse la desestimación total de la reclamación al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V R. 10.2. Esto puede hacerse inclusive, antes de contestar la demanda. *Íd.* Conforme la mencionada regla, podrá solicitarse la desestimación de un pleito cuando se alegue**:** (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio, y (6) dejar de acumular una parte indispensable. *Íd.*

En cuanto a la evaluación de un escrito de esta naturaleza, en innumerables ocasiones el Tribunal Supremo de Puerto Rico ha establecido que los tribunales están obligados a tomar como ciertos todos los hechos bien alegados de la demanda y que hayan sido

---

[9] El Estado sometió su *Alegato del Estado*, mientras que la OAT compareció mediante *Alegato de la Parte Apelada.* Entradas Núm. 3 y 5, respectivamente, Sistema Unificado para el Manejo y Administración de Casos del Tribunal de Apelaciones, (SUMAC-TA).

aseverados de manera clara y concluyente. *Díaz Vázquez et al. v. Colón Peña et al.,* 214 DPR 1135 (2024). Así pues, para que una moción de desestimación pueda prosperar, tiene que demostrarse certeramente que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pueda probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor. *Banco Popular de Puerto Rico v. Cable Media of PR, Inc.,* 2025 TSPR 1, 215 DPR ____; *Díaz Vázquez et al. v. Colón Peña et al.,* *supra* a la pág. 1150; *Inm. Baleares et al. v. Benabe et al.*, 214 DPR 1109, 1128 (2024).

En ese sentido, la desestimación de la demanda procederá solo si "surge que carece de todo mérito o que la parte demandante no tiene derecho a remedio alguno bajo cualesquiera de los hechos que se puedan probar." *Cruz Pérez v. Roldán Rodríguez, et al.*, 206 DPR 261, 267-268 (2021). Siendo así, el tribunal deberá considerar "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida." *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409 (2008) al mencionar a *Pressure Vessels P.R. v. Empire Gas P.R.,* 137 DPR 497, 505 (1994).

Para que un demandado prevalezca cuando presente una moción de desestimación al amparo de la Regla 10.2(5), *supra,* debe establecer con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que pueda probarse en apoyo a su reclamación, aun interpretando la demanda de la forma más liberal posible a su favor. *Costas Elena y otros v. Magic Sport y otros,* 213 DPR 523 (2024), al mencionar a *Ortiz Matías et al. v. Mora Development,* 187 DPR 649, 654 (2013). Luego de efectuar este análisis, si aun así el tribunal entiende que no se cumple con el estándar de *plausibilidad,* entonces debe desestimar la demanda, pues no puede permitir que proceda una demanda

insuficiente en derecho bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba. *Costas Elena y otros v. Magic Sport y otros, supra* a la pág. 535.

*B.*

El Poder Judicial es la rama gubernamental encargada de interpretar y aplicar la ley. Como resultado de dicha encomienda, a través de los años se han desarrollado varias doctrinas de autolimitación. Tal es el caso de las doctrinas de justiciabilidad, las de abstención y la doctrina de agotamiento de remedios administrativos, entre otras.[10] En lo que atañe, enfocaremos nuestro análisis en la justiciabilidad. Esta doctrina, requiere la existencia de un caso o una controversia real para que los tribunales puedan ejercer válidamente su jurisdicción.[11].

Un principio que emana de la discutida doctrina es que una controversia no es justiciable cuando: (1) **se procura resolver una cuestión política**; (2) una de las partes carece de legitimación activa; (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva; o (5) se intenta promover un pleito que no está maduro.[12]

En lo concerniente, es conveniente recalcar que la doctrina de cuestión política plantea que existen asuntos que no son susceptibles de una determinación judicial, puesto que su resolución corresponde a las otras ramas del gobierno y no al Poder Judicial. *Aponte Rosario et al. v. Pres. CEE II*, 205 DPR 407, 445 (2020) al citar a *Noriega v. Hernández Colón*, 135 DPR 406 (1994). La misma limita la intervención judicial de asuntos que fueron

---

[10] *Frontera Suau v. Padilla Rivera*, 2025 TSPR 54, 216 DPR ____.
[11] *Rivera et al. v. Torres et al.*, 214 DPR 111,132 (2024) al citar a *Hernández, Santa v. Srio. de Hacienda*, 208 DPR 727, 738 (2022); *Ramos, Méndez v. García García*, 203 DPR 379, 393–394 (2019); *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 60 (2009); *Com. de la Mujer v. Srio. de Justicia,* 109 DPR 715, 720 (1980).
[12] *Bhatia Gautier v. Gobernador*, 199 DPR 59 (2017). Énfasis suplido.

delegados a las otras ramas políticas del Gobierno o, en última instancia, al electorado. *Córdova y otros v. Cámara Representantes*, 171 DPR 789, 800 (2007).

La discutida doctrina aplica en tres (3) instancias, a saber: (1) cuando existe un asunto que ha sido asignado textualmente por la constitución a otra rama del Gobierno; (2) si no existen criterios de decisión susceptibles de descubrirse y administrarse por los tribunales; y (3) cuando lo aconsejable es la abstención judicial, por consideraciones derivadas de la prudencia. *Aponte Rosario et al. v. Pres, CEE II, supra*.

Por otro lado, y como elemento necesario para la adjudicación debida de los méritos de una controversia, la doctrina de justiciabilidad les impone a los tribunales el deber de evaluar la legitimación activa de los promoventes de una acción. *Hernández Santa v. Srio. de Hacienda, supra* a la pág. 739. Este elemento de justiciabilidad difiere de los otros porque gira primordialmente en torno a la parte que prosigue la acción y solo secundariamente en cuanto a las cuestiones a adjudicarse. *Id.,* al citar a *Col. Ópticos de P.R. v. Vani Visual Center*, 124 DPR 559, 564 (1989).

Así pues, quien solicite un remedio judicial debe demostrar que: (1) sufrió un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una relación causal razonable entre el daño y la acción ejercida, y (4) la causa de acción surge al palio de la Constitución o de una ley. *DACO v. LUMA Energy, LLC*, 2025 TSPR 126, 216 DPR ___. La parte demandante, debe procurar que su interés sea "'de tal índole, que, con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y hará de traer a la atención del tribunal las cuestiones en controversia.'"[13]

---

[13] *Ramos, Méndez v. García García, supra* y casos allí citados.

*C.*

La Sec. 2 del Art. I de nuestra Constitución, consagra la Doctrina de Separación de Poderes al disponer que: "[e]l gobierno del Estado Libre Asociado tendrá forma republicana y sus Poderes Legislativo, Ejecutivo y Judicial, según se establecen por esta Constitución, estarán igualmente subordinados a la soberanía del pueblo de Puerto Rico." Esta distribución tripartidista del poder público, garantiza la independencia de cada rama al establecer sus responsabilidades y el ámbito de acción. De la misma forma, persigue evitar la concentración de poderes en una sola, o el abuso de poder de parte de otra. *Dalmau Ramírez et al. v. ELA et al.*, 214 DPR 841 (2024).

*D.*

Habiéndose aceptado por el Pueblo de Puerto Rico mediante referéndum celebrado el 4 de junio de 1951, las disposiciones de la Ley Pública 600 aprobada por el Congreso de los Estados Unidos, los delegados que conformaron la Convención Constituyente tuvieron la encomienda de redactar nuestra Constitución. Conforme surge del Diario de Sesiones de la Convención Constituyente, como parte de las discusiones llevadas a cabo se trajo a colación el retiro de los jueces. De allí surge la siguiente discusión:

> [Sr. PRESIDENTE:] La presidencia no oye enmiendas a la sección 9. Se pasa a la sección 10.
> Sr. SECRETARIO: "Sección 10.—El sueldo de los jueces se fijará por ley especial y no será disminuido durante su incumbencia. La Asamblea Legislativa establecerá un sistema de retiro para los jueces."
> Sr. REYES DELGADO: Sr. Presidente, para una enmienda.
> Sr. PRESIDENTE: Sr. Delgado.
> Sr. REYES DELGADO: Que en la línea 17 el punto después de "jueces" se convierta en coma y se escriba: "que será compulsorio a los 70 años de edad", cuando hubiere cumplido 70 años de edad.
> Sr. GUTIERREZ FRANQUI: Secundo la enmienda.
> Sr. PRESIDENTE: ¿Hay debate?
> Sr. REYES DELGADO: Sr. Presidente. Para indicar que nosotros creemos que esta disposición no debe ser aplicable a los actuales jueces que desempeñan los cargos de cualquier categoría, pero me parece que esta cuestión de mantenerlos en sus puestos independientemente de esta sección puede acogerse en las disposiciones generales o transitorias de la constitución. Ahora, si entiende la

Convención que debe ponerse ahí, yo no tengo inconveniente en acoger una enmienda y aceptarla.
Sr. GUTIERREZ FRANQUI: Yo voy a hacer la enmienda a la enmienda en el entendido de que podría trasladarse esa parte a las disposiciones transitorias o generales de la constitución.
Sr. REYES DELGADO: Yo acepto la enmienda.
Sr. PRESIDENTE: ¿La enmienda es en el sentido de [que] "esta disposición no se aplicará a los jueces en ejercicio al aprobarse la constitución"?
Sr. GUTIERREZ FRANQUI: Exacto. Sí, señor.
Sr. PRESIDENTE: Habiendo sido aceptada es una sola enmienda. Los que estén por la afirmativa lo significarán levantando la mano derecha... Cincuenta y dos votos en la afirmativa. Ha sido adoptada la enmienda. Se pasa a la sección 11.[14]

Salvo las transcritas expresiones, el Diario de Sesiones de la Convención Constituyente no contiene debates o comentarios adicionales sobre el retiro obligatorio de los jueces a los 70 años.

-III-

En la *Sentencia* apelada, el foro recurrido determinó que era prudente abstenerse de atender la controversia planteada por los apelantes, amparándose en la doctrina de autolimitación de justiciabilidad. Si bien, constató la legitimación activa de al menos el Hon. Felipe Rivera Colón y la madurez de su reclamo, coincidió con la postura de los apelados en cuanto al principio de cuestión política. Al así hacer, destacó que el remedio perseguido por los apelantes no era otra cosa, sino que alterar el texto de nuestra Carta Magna mediante la eliminación de uno de sus articulados; asunto que correspondía a la esfera encargada de formular la política pública, o sea, la Asamblea Legislativa.

Los apelantes sostienen que tal decisión es incorrecta. Con tal fin, plantean que la determinación apelada no evaluó ni interpretó la realidad de los cambios en nuestro estado de derecho y en nuestra Constitución como consecuencia de la aprobación y vigencia de la Ley PROMESA, la creación de la JSF, así como lo resuelto en la jurisprudencia federal que cita.[15] Sin más,

---

[14] Diario de Sesiones de la Convención Constituyente, págs. 2059-2060.
[15] Específicamente, *Commonwealth of Puerto Rico v. Sánchez Valle*, 579 US 59 (2016) al confirmar a *Pueblo v. Sánchez Valle, et al,* 192 DPR 594 (2015);

argumentan que, habiéndose **eliminado** por virtud del Plan Fiscal del 28 de febrero de 2017 la pensión garantizada a los jueces y juezas de Puerto Rico por nuestra Constitución, el retiro obligatorio a los 70 años en esta dictaminado es inconstitucional, pues provee un trato distinto a los jueces y juezas del resto de los empleados públicos, quienes no están obligados a retirarse al llegar a determinada edad.

Al mismo tiempo, defienden la legitimación activa del Hon. Eric R. Ronda Del Toro y, a tales fines, sucintamente exponen que "[d]e mantenerse como válido una porción del lenguaje que el tiempo convirtió en inconstitucional, se tendría que retirar 9 años antes de vencer realmente su nombramiento." y que "[p]or ello el injunction y la Sentencia Declaratoria que aquí se solicitan son necesarios para ajustar el estado de derecho.".

Nos parece que es correcto el planteamiento de los apelantes en cuanto a que el Hon. Eric Ronda Del Toro ostentaba legitimación activa para comparecer como demandante. Al tomarse como ciertas y correctas las alegaciones de la *Demanda,* es fácil apreciar que este reclama un daño claro y palpable, pues una vez cumpla 70 años y deba retirarse, quedan todavía 9 años de vigencia en su nombramiento. Su daño, también es uno real, inmediato y preciso, pues cumplirá la mencionada edad en tiempo cercano (enero de 2027). No hay duda de que existe una relación causal entre el daño y la acción ejercida, ya que es por virtud del lenguaje constitucional que impugna que se verá obligado a retirarse antes de que su vencimiento haya expirado. Por último, nos resulta claro que es del texto de nuestra Constitución que nace su causa de acción. En definitiva, por cumplir con los requisitos que nuestro ordenamiento

---

*Commonwealth of Puerto Rico, et al v. Franklin California-Free Trust, et al.* 579 US 115 (2016); *Peaje Invs. LLC v. García Padilla,* 845 F.3d 505, 513 (1st. Cir. 2017); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico,* 18-1773 y 18-1777 (1st Cir. 2019 Slip Opinion February 22, 2019, *In re Fin. Oversight &Mgmt. Bd. for Puerto Rico,* 32 F. 4th 67 (2022).

jurídico le exige a quien solicita un remedio judicial a su favor, concluimos que cualquier expresión en contrario efectuada por el TPI en el dictamen apelado es incorrecta por lo que para estos fines resolvemos modificarlo.

Ahora, discrepamos con los apelantes en cuanto a la señalada equivocación por el TPI en la aplicación del principio de cuestión política al pleito. Contrario a lo que estos arguyen, aun luego de tomar como ciertos los hechos bien alegados en su *Demanda*- tal cual procede hacer ante una moción de desestimación al palio de la Regla 10.2 de Procedimiento Civil, *supra*- la controversia que estos llevaron ante el TPI no es una justiciable. Por el contrario, como correctamente resolvió el foro primario, se trata de una cuestión política que no es susceptible de una determinación judicial.

Debido a la importancia que acarrea la decisión que hoy sostenemos, a continuación, atendemos los planteamientos específicos levantados por los apelantes y explicamos por qué son errados.

En primer lugar, rechazamos la implicación que estos parecen sugerir, tuvo *Commonwealth of Puerto Rico v. Sánchez Valle*, *supra*, para sostener que a la controversia de autos no le es aplicable lo resuelto *Gregory v. Ashcroft*, 501 US 452 (1991).[16] Según los apelantes, y conforme alegadamente se resolvió en *Commonwealth of Puerto Rico v. Sánchez Valle*, supra, Puerto Rico es una entidad sin soberanía propia, cuyo señorío surge y se ejerce desde los Estados Unidos de América.[17] Lo resuelto en el mencionado caso y cualquier expresión en él contenida, se circunscribe en el contexto específico de un asunto de naturaleza penal; específicamente y en

---

[16] **En el citado caso, el Tribunal Supremo Federal resolvió que, dado que la edad no es una clasificación sospechosa bajo la cláusula de igual protección de las leyes y tampoco existe un interés fundamental amparado en la Constitución federal en ocupar el cargo de Juez, procedía examinar la disposición constitucional en cuestión (retiro obligatorio de los jueces al cumplir 70 años) bajo el escrutinio racional.**

[17] Véase, página 18 de su *Apelación*, Entrada Núm. 1 SUMAC-TA.

<u>cuanto a la garantía de la doble exposición. Por tanto, es improcedente aplicar indiscriminadamente por analogía lo allí dicho a la situación de autos desplazándose así nuestra Constitución.</u>

Más aún, colegimos que la contención de los apelantes de que las facultades judiciales no le son inherentes a Puerto Rico por estar sujetas al Congreso Federal según *Commonwealth v Sánchez Valle*, supra, no tiene cabida en varias expresiones del Tribunal Supremo Federal, a saber:

> [T]he Federal Government relinquished its control over Puerto Rico's local affairs, grating Puerto Rico a measure of autonomy comparable to that possessed by the States. *Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Aurelius Inv., LLC.*, 590 US 448, 485 (2020).

> Puerto Rico, like a state, is an autonomous political entity, "sovereign over matters of rule by the Constitution." *Rodriguez v. Popular Democratic Party*, 457 US 1, 8 (1982).

Habida cuenta de lo anterior, no encontramos impedimento alguno por el cual guiarnos por lo resuelto en *Gregory v. Ashcroft*, supra. Tampoco identificamos razón alguna por la cual deberíamos apartarnos del análisis efectuado en la mencionada jurisprudencia- la cual es vinculante para los estados y territorios, como lo es Puerto Rico- e incorporarlo en nuestro análisis de la situación frente a nos. Veamos.

Al igual que ocurre en el presente pleito, en *Gregory v. Ascroft*, supra, varios jueces instaron una demanda para impugnar la validez de una disposición constitucional que hacía obligatorio su retiro una vez cumplieran 70 años. En esta, alegaron que dicha disposición violentaba la ADEA, así como que constituía una violación a la igual protección de las leyes contenida en la décimo cuarta enmienda de la Constitución de los Estados Unidos. A solicitud de la parte demandada, el caso fue desestimado en la Corte de Distrito. El Tribunal de Apelaciones para el Octavo Distrito confirmó la desestimación, presentándose el caso ante la consideración del Tribunal Supremo federal.

Al resolver la controversia, el máximo foro federal concluyó que la ADEA no era extensiva a los jueces, pues por definición del estatuto, era inaplicable a personas en un cargo que formula política pública (*appointees on the policymaker level)* cuyo término estimó era lo suficientemente amplio para incluir a los jueces. De igual forma, resolvió que la edad no era una clasificación sospechosa por lo que la disposición constitucional cuestionada debía examinarse bajo el escrutinio racional.[18]

Después de ello, reconoció que los ciudadanos de Missouri tenían un interés legítimo, y hasta un poco apremiante, en mantener una judicatura plenamente capaz de desempeñar las exigentes tareas que los jueces realizan. Si bien en la opinión la corte federal suprema reconoció que dista mucho de ser cierto que todos los jueces sufran un deterioro significativo en su desempeño al cumplir 70 años, resolvió que era prerrogativa de los ciudadanos de un Estado el establecer un requisito de idoneidad para quienes habrán de ser sus jueces.[19] A su vez, sentenció que la ADEA no era aplicable al caso y ni esta, ni la cláusula sobre la igual protección de las leyes prohibían tal decisión, sosteniéndose así la decisión alcanzada por los tribunales inferiores.

Como podemos observar, las circunstancias del caso *Gregory v. Ashcroft,* supra, son sumamente similares a las que tenemos frente a nosotros. Al igual que ocurrió en esa ocasión, hoy tenemos dos jueces que impugnan la disposición incluida en nuestra Constitución que hace obligatorio el retiro a los 70 años y reclaman

---

[18] Cabe destacar que el Tribunal Supremo de Puerto Rico en *Pueblo en interés del menor L.R.R.*, 125 DPR 78 (1989) resolvió que no procedía un planteamiento de clasificación sospechosa por edad. Así también fue reafirmado en *Rodríguez Rodríguez v. ELA*, 130 DPR 562 (1992).

[19] Reconocemos que, tal como arriba anunciamos, del Diario de Sesiones de la Convención Constituyente no surge discusión alguna en cuanto a qué motivó incluir la disposición que hace el retiro de los jueces obligatorio una vez cumplen 70 años. Ahora bien, la ausencia de una expresión específica en torno a ello no invita a distanciarnos de la decisión alcanzada en el discutido caso, puesto que la aprobación de la disposición constitucional impugnada por los apelantes no estuvo cimentada en aspectos económicos del retiro, sino en un interés de establecer un cese de funciones al advenir a esta edad.

que la misma es contraria a la ADEA y que infringe la igual protección de las leyes contenida en la Décimo Cuarta Enmienda a la Constitución Federal. Dado que, en *Gregory v. Ashcroft,* supra, este argumento fue rechazado, nada hay que añadir al respecto.

De otra parte, es meritorio establecer que la aprobación de la Ley PROMESA o la institución de la JSF no tuvo el efecto de <u>enmendar</u> de manera alguna la Constitución del Estado Libre Asociado como alegan los apelantes.[20] De hecho, rechazamos cualquier planteamiento de los apelantes dirigido a establecer una enmienda ajena al mecanismo que, nuestra propia constitución establece.

Sí reconocemos que PROMESA tuvo el efecto colateral de impactar los poderes constitucionalmente reconocidos al Poder Ejecutivo y a la Legislatura, en la medida en que la JSF creada por la mencionada ley les impide reajustar partidas presupuestarias sin contar previamente con su aval.[21] No obstante, no podemos acoger el resultado que los apelantes proponen tuvo la aprobación del estatuto federal sobre nuestro sistema de gobierno, particularmente sobre nuestra Constitución.

Primero, "en todos los casos de desplazo (*preemption*) se parte del supuesto de que los poderes de los estados no habrían de ser desplazados por la ley federal a menos que ese fuera el propósito claro y manifiesto del Congreso" (traducción nuestra) *Wyeth v. Levine,* 555 US 555, 129 S.Ct. 1187. Segundo, y claramente contrario a lo que argumentan, el Plan de Ajuste emitido por la Junta de Subastas al amparo de PROMESA no eliminó las pensiones

---

[20] Cabe señalar que reconocemos que existe insatisfacción con la aplicación de dicho estatuto.

[21] Véase la Sección 204(c) de PROMESA (Restriction on Budgetary Adjustments), cuyo primer inciso en lo correspondiente dispone: "(1) SUBMISSIONS OF REQUESTS TO OVERSIGHT BOARD.—If the Governor submits a request to the Legislature for the reprogramming of any amounts provided in a certified Budget, the Governor shall submit such request to the Oversight Board, which shall analyze whether the proposed reprogramming is significantly inconsistent with the Budget, and submit its analysis to the Legislature as soon as practicable after receiving the request."

de los jueces. Así claramente surge de *In re Financial Oversight and Management Board for Puerto Rico,* 636 B.R.1, 248 (Mem):

> "To avoid creating future pension liabilities and to stabilize the system for the benefit of both taxpayers and future retirees, the JRS plan benefit accrual shall be **modified**. In doing so, JRS members will retain the benefits they have accrued up to and including the Effective Date, as defined in the Plan; provided, however, that any future cost of living adjustments are eliminated pursuant to the Plan, as any right to such future adjustments is not an accrued benefit and will not be an accrued benefit as of the Effective Date. Benefits accrued from and after the Effective Date shall be based on contributions and earnings in new segregated DC retirement accounts funded by employee contributions. As a result, employees will have the certainty that their contributions and investment returns will be safeguarded for the future, ensuring retirement security. (Énfasis suplido)

Al leer el texto transcrito nos resulta claro que lo que ocurrió fue una **modificación** al sistema de retiro judicial y a cómo serían las pensiones de los jueces y juezas. Este cambio no afecta la disposición constitucional que atacan.[22] Mucho menos, la enmienda.

Nuestra Carta Magna dispone en detalle los mecanismos para hacer viable su modificación. Así, la sección 1 de su Artículo VII establece como a continuación se transcribe:

> **La Asamblea Legislativa podrá proponer enmiendas a la Constitución** mediante resolución concurrente que se apruebe por no menos de dos terceras partes del número total de los miembros de que se compone cada cámara. **Toda proposición de enmienda se someterá a los electores capacitado en referéndum especial**, pero la Asamblea Legislativa podrá, siempre que la resolución concurrente se apruebe por no menos de tres cuartas partes del número total de los miembros de que se compone cada cámara, disponer que el referéndum se celebre al mismo tiempo que la elección general siguiente. Cada proposición de enmienda deberá votarse separadamente y en ningún caso se podrá someter más de tres proposiciones de enmienda en un mismo referéndum. Toda enmienda contendrá sus propios términos de vigencia **y formará parte de esta Constitución si es ratificada por el voto de la mayoría de los electores que voten sobre el particular.** Aprobada una proposición de enmienda, deberá publicarse con tres meses de antelación, por lo menos, a la fecha del referéndum.
>
> (Énfasis suplido)

---

[22] El retiro al que nuestra Constitución hace referencia trata de la separación física del trabajo, no a una remuneración económica específica, ni tampoco a un sistema de retiro en particular.

Del texto aquí transcrito surge claramente que el proceso de enmienda a nuestra Constitución radica por mandato constitucional exclusivamente en el ámbito del poder de la Asamblea Legislativa. Inclusive, así ha sido reafirmado por el Tribunal Supremo de Puerto Rico.[23] Por tanto, le corresponde a la Asamblea Legislativa, y solamente a ella, el proponer una enmienda a nuestra Constitución que deje sin efecto el retiro obligatorio de los jueces a los 70 años, si así lo entendiera necesario. Habida cuenta de que el remedio que los apelantes solicitaron en su *Demanda* persigue eliminar tal disposición, no es a los tribunales a quienes corresponde mediante un dictamen judicial hacerlo. Como correctamente dictaminó el TPI, la controversia planteada trata de una cuestión política que no es justiciable.

-IV-

Por los fundamentos antes consignados, modificamos la *Sentencia* emitida en el caso, con fecha del 12 de diciembre de 2025, a los únicos efectos de reconocerle legitimación activa al Hon. Eric Ronda Del Toro. Señalado lo anterior, y así modificada, se confirma en todo los demás.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[23] Véase, *Córdova y otros v. Cámara de Representantes, supra.*